EN BANC ARGUMENT HELD DECEMBER 13, 2022

Nos. 20-35721, 20-35727, 20-35728

───────────────

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

───────────────

FRIENDS OF ALASKA NATIONAL WILDLIFE REFUGES, ET AL.,
*Plaintiffs/Appellees*,

v.

DEBRA HAALAND,
in her official capacity as Secretary of the Interior, et al.,
*Defendants/Appellants*,

and

KING COVE CORPORATION, ET AL.,
*Intervenor-Defendants/Appellants*.

───────────────

Appeal from the United States District Court for the District of Alaska
No. 3:19-cv-00216 (Hon. John W. Sedwick)

───────────────

**FEDERAL DEFENDANTS-APPELLANTS' MOTION TO DISMISS**

───────────────

Of Counsel:

KENNETH M. LORD
*Attorney*
U.S. Dep't of the Interior

TODD KIM
*Assistant Attorney General*
ROBERT LUNDMAN
MICHELLE MELTON
*Attorneys*
Environment and Natural Resources Division
U.S. Department of Justice
Post Office Box 7415
Washington, D.C. 20044
(202) 532-3251
michelle.melton@usdoj.gov

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................... iii

INTRODUCTION ...........................................................................1

STATEMENT  ...............................................................................1

ARGUMENT   ...............................................................................4

  I.  The case is moot because Interior has withdrawn from the 2019 Agreement 4

  II.  No exception to the mootness rule precludes dismissal. ................................7

      A.     The "capable of repetition, yet evading review"
            exception is inapplicable. ....................................................7

      B.     The "voluntary cessation" exception also does not apply...................11

  III. The government takes no position on vacatur. ...........................................  15

CONCLUSION ...........................................................................  16

CERTIFICATE OF COMPLIANCE........................................................17

ATTACHMENT:  SECRETARY'S WITHDRAWAL MEMORANDUM

# TABLE OF AUTHORITIES

## Cases

*ACLU of Nevada v. Masto*,
  670 F.3d 1046 (9th Cir. 2012) .............................................................15

*Already, LLC v. Nike*,
  568 U.S. 85 (2013) .............................................................................11

*Am. Cargo Trans., Inc. v United States*,
  625 F.3d 1176 (9th Cir. 2010) ............................................................11

*Am. Diabetes Ass'n v. U.S. Dep't of the Army*,
  938 F.3d 1147 (9th Cir. 2019) ..................................................... 12, 13

*Arizonans for Official English v. Arizona*,
  520 U.S. 43, 67 (1997) ........................................................................4

*Brach v. Newsom*,
  38 F.4th 6 (9th Cir. 2022) ............................................................. 6, 12

*Bunker Ltd. P'ship v. United States*,
  820 F.2d 308 (9th Cir. 1987) ...............................................................8

*Church of Scientology v. United States*,
  506 U.S. 9 (1992)................................................................................5

*City of Los Angeles v. Barr*,
  929 F.3d 1163, 1172 (9th Cir. 2019) ...................................................9

*City of Los Angeles v. Lyons*,
  461 U.S. 95 (1983) ..........................................................................6, 7

*Fikre v. FBI*,
  904 F.3d 1033 (9th Cir. 2018) ...........................................................12

*Forest Guardians v. U.S. Forest Serv.*,
  329 F.3d 1089 (9th Cir. 2003) ...........................................................11

iii

*Friends of Alaska Wildlife Refuges v. Haaland*,
    29 F.4th 432 (9th Cir. 2022) ...................................................2

*Friends of Alaska Wildlife Refuges v. Haaland*,
    54 F.4th 608 (9th Cir. 2022) ....................................................2

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*,
    528 U.S. 167 (2000)......................................................... 13, 14

*Greenpeace Action v. Franklin*,
    14 F.3d 1324 (9th Cir. 1992) ...............................................8, 9

*Idaho Dep't of Fish & Game v. NMFS*,
    56 F.3d 1071 (9th Cir. 1995) .............................................. 9, 11

*Karcher v. May*,
    484 U.S. 72 (1987)................................................................15

*Knox v. Serv. Employees Int'l Union*,
    567 U.S. 298 (2012). ............................................................11

*Lewis v. Continental Bank Corp.*,
    494 U.S. 472 (1990)............................................................5, 7

*Mayorkas v. Innovation Law Lab*,
    141 S. Ct. 2842 (2021)...........................................................6

*McCormack v. Herzog*,
    788 F.3d 1017 (9th Cir. 2015) .............................................13

*Murphy v. Hunt*,
    455 U.S. 478 (1982) .............................................................10

*Natural Resources Defense Council v. Evans*,
    316 F.3d 904 (9th Cir. 2003) .................................................9

*NASD Dispute Resolution, Inc. v. Judicial Council of State of California*,
    488 F.3d 1065 (9th Cir. 2007) .............................................15

*Northwest Resource Information Ctr. v. National Marine Fisheries Serv.*,
  56 F.3d 1060 (9th Cir. 1995) ...............................................................8

*Oregon Natural Resources Council, Inc. v. Grossarth*,
  970 F.2d 1377 (9th Cir. 1992) ............................................................6

*Protectmarriage.com-yes on 8 v. Bowen*,
  752 F.3d 827 (9th Cir. 2014) .........................................................7, 8

*Public Utilities Comm'n of Cal. v. FERC*,
  100 F.3d 1451 (9th Cir. 1996) ...........................................................6

*Rosebrock v. Mathis*,
  745 F.3d 963 (9th Cir. 2014) ...................................................... 12, 13

*Sample v. Johnson*,
  771 F.2d 1335 (9th Cir. 1985) .........................................................10

*State of Alaska Dep't of Fish & Game v. Fed. Subsistence Bd*
  --- F.4th ---, 2023 WL 2487268 (9th Cir. 2023) .................................. 8, 11, 14

*Trinity Lutheran Church of Columbia v. Comer*,
  137 S. Ct. 2012 (2017)....................................................................13

*Tur v. YouTube, Inc.*,
  562 F.3d 1212 (9th Cir. 2009) ...........................................................5

*United States v. Tanoue*,
  94 F.3d 1342 (9th Cir. 1996) .............................................................5

*U.S. Bancorp Mortg. Co. v. Bonner Mall Partnership*,
  513 U.S. 18, 25 (1994)....................................................................15

*Wildwest Institute v. Kurth*,
  855 F.3d 995, 1003 (9th Cir. 2017) ....................................................9

## Statutes

16 U.S.C. § 3120(a) ..........................................................................2

16 U.S.C. § 3192(h) .................................................................. 1, 9, 10

**Other Authorities**

Wright & Miller, *Fed. Prac. and Proc*. § 3533.8 ......................................................7

# INTRODUCTION

Plaintiffs challenged the 2019 land exchange agreement between the Department of the Interior and King Cove Corporation ("2019 Agreement"), requesting that the court invalidate, vacate, and set aside that agreement. On March 14, 2023, the Secretary of the Interior issued a decision memorandum withdrawing from the 2019 Agreement. The Department of the Interior's withdrawal from the 2019 Agreement ends the dispute between Plaintiffs and Interior—there is no longer an agreement to be invalidated, vacated, or set aside. Because the Department of the Interior has withdrawn from the land exchange agreement that is the subject of Plaintiffs-Appellees' complaint, this case is moot. Federal Defendants-Appellants ("Interior") accordingly move to dismiss the case on that basis.

Counsel for Federal Defendants-Appellants has conferred with the parties about this motion. Intervenor-Defendants oppose the motion. Plaintiffs do not oppose the motion, but intend to file a response.

# STATEMENT

In 2019, then-Secretary of the Interior David Bernhardt, pursuant to section 1302(h) of the Alaska National Interest Lands Conservation Act (ANILCA), entered into the 2019 Agreement with King Cove Corporation. 2-ER-235–44; 16 U.S.C. § 3192(h). Plaintiffs challenged the lawfulness of the 2019 Agreement,

raising claims under the Administrative Procedure Act (APA), ANILCA, the
National Environmental Policy Act (NEPA), and the Endangered Species Act
(ESA). The district court ruled for Plaintiffs on their APA and ANILCA-related
claims and vacated the 2019 Agreement. The Secretary of the Interior, along with
Intervenor-Defendants Alaska and King Cove Corporation, appealed. A panel of
this Court reversed, 29 F.4th 432 (9th Cir. 2022), but the Court then granted
Plaintiffs' petition for rehearing en banc and vacated the panel decision, 54 F.4th
608 (9th Cir. 2022). Oral argument was held on December 13, 2022.

On March 14, 2023, Interior withdrew from the 2019 Agreement. In a
decision memorandum, Secretary Haaland set forth her decision and explained her
reasoning. *See* Attachment. Specifically, the Secretary offered three independent
grounds for her decision.

*First*, invoking Section 810(a) of ANILCA, 16 U.S.C. § 3120(a), the
Secretary noted that Secretary Bernhardt failed to consider the effect of the 2019
Agreement on subsistence uses of the refuge lands. Attachment at 2. Although
then-Secretary Jewell considered the impact of a land exchange on subsistence
uses under Section 810(a) in 2013, Secretary Haaland explained that there are
several differences between the potential exchange considered in 2013 by
Secretary Jewell and the 2019 exchange authorized by Secretary Bernhardt. The
Secretary explained that the 2019 Agreement did not prohibit commercial use of

the road, did not require barriers to be installed along the road, authorized gravel mining within the Refuge, allowed twice as much land for the road, and would result in less land coming to the Refuge. *Id.* Secretary Haaland explained that these changes could amount to significant restrictions on subsistence uses, and that Secretary Bernhardt's failure to assess the collective impacts of these changes on subsistence uses constituted a "procedural deficiency that warrants withdrawal from the 2019 exchange." *Id.*

*Second*, Secretary Haaland stated that she "harbor[s] strong concerns" about the failure to evaluate the 2019 Agreement pursuant to NEPA. *Id.* at 3. She again cited the changes between the potential land exchange considered in 2013 by Secretary Jewell and the land exchange authorized by the 2019 Agreement and stated that, regardless of whether further NEPA analysis was necessary as a matter of law, the changes had warranted further analysis and public comment as a matter of policy. *Id.* She also explained that, in addition to further NEPA analysis, further review under ESA Section 7 was warranted as a matter of policy. *Id.* The lack of additional analysis under NEPA and further review under the ESA supplied the Secretary with "an independent basis" for withdrawing from the 2019 Agreement. *Id.*

*Third*, the Secretary set forth additional policy reasons for withdrawing from the 2019 Agreement. She explained that she had "thoroughly considered and

reweighed the many competing policy objectives involved with the 2019 [Agreement] based on the record before Secretary Bernhardt" and "reached a different policy judgment." *Id.* The Secretary placed different weight on protection of subsistence resources. But she also recognized considerations weighing in favor of a land exchange, such as the high and ongoing costs to taxpayers of medical evacuations. *Id.* at 4. She concluded that she "d[id] not find that these considerations [in favor of the exchange] outweigh the countervailing policy considerations." *Id.* Accordingly, the Secretary explained, she decided "to explore a different path." *Id.* at 4.

The Secretary clarified that her decision "does not foreclose further consideration of a land exchange to address the community's concerns," but also concluded that any such future "exchange would likely be with different terms and conditions." *Id.* at 2; *see also id.* at 4.

## ARGUMENT

### I.  The case is moot because Interior has withdrawn from the 2019 Agreement.

Article III, Section II of the Constitution limits the jurisdiction of federal courts to cases and controversies. U.S. Const. art. III, § 2. The actual controversy that provides jurisdiction, moreover, "must be extant at all stages of review, not merely at the time the complaint is filed." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997) (internal quotation marks omitted). Thus, if an

intervening event occurs during the appeal process that prevents the court from granting any effective relief, the court loses jurisdiction over the appeal. *Church of Scientology v. United States*, 506 U.S. 9, 12 (1992); *accord United States v. Tanoue*, 94 F.3d 1342, 1344 (9th Cir. 1996) ("[A]n appeal must be dismissed as moot if an event occurs while the appeal is pending that makes it impossible for the appellate court to grant any effective relief whatever to the prevailing party.") (internal quotation marks omitted). Where no live dispute between the parties remains, barring exceptional circumstances, the court's jurisdiction ends. *See Lewis v. Continental Bank Corp.*, 494 U.S. 472, 447 (1990). "The basic question in determining mootness is whether there is a present controversy as to which effective relief can be granted." *Tur v. YouTube, Inc.*, 562 F.3d 1212, 1213 (9th Cir. 2009).

The Secretary's decision to withdraw from the 2019 Agreement moots this case. Plaintiffs' lawsuit is wholly targeted at Interior's 2019 Agreement, as it alleges that Interior violated the APA, ANILCA, NEPA, and the ESA when it entered into that agreement. *See* Amended Compl., Dkt. 17 at 38–46. The relief Plaintiffs seek is the invalidation, vacatur, and setting aside of the 2019 Agreement. *Id.* at 47; *accord* Mot. Summ. J., Dkt. 32 at 39–40.

There is no longer a "present controversy" about the 2019 Agreement and Secretary Bernhardt's reasons for entering into it because Interior has now

withdrawn from that agreement; Plaintiffs' complaint challenges a decision that is now no longer in effect. Moreover, Plaintiffs have already received the relief prayed for in their complaint, and therefore the Court cannot grant them any "effective relief." The case is moot. *See, e.g.*, *Mayorkas v. Innovation Law Lab*, 141 S. Ct. 2842 (2021) (after Department of Homeland Security terminated the program challenged by plaintiffs, Supreme Court vacated judgment and remanded to court of appeals with instructions to dismiss the case as moot); *Brach v. Newsom*, 38 F.4th 6, 11 (9th Cir. 2022) (en banc) (when "there is no longer any [government action] for the court to declare [unlawful] or to [vacate]," the case is moot); *Public Utilities Comm'n of Cal. v. FERC*, 100 F.3d 1451, 1458–59 (9th Cir. 1996) (case was moot after FERC vacated its own orders that had been challenged); *Oregon Natural Resources Council, Inc. v. Grossarth*, 970 F.2d 1377, 1379–80 (9th Cir. 1992) (agency withdrawal of a challenged decision renders the challenge to that decision moot).

Nor would an injunction be available to Plaintiffs. There is no immediate threat that Interior will re-enter an agreement on the same terms and conditions. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983) ("The equitable remedy is unavailable absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again."). The Secretary has rejected Secretary Bernhardt's policy

judgment concerning this land exchange and explained that any future land exchange would likely be on different terms and conditions following additional analysis and process. *See* Attachment at 2, 3. Therefore, there is no immediate threat that Interior will re-enter a new land exchange agreement, much less one on materially the same terms as the 2019 Agreement. The same reasoning makes a declaratory judgment unavailable as well. *Lyons*, 461 U.S. at 104.

## II. No exception to the mootness rule precludes dismissal.

The rule against adjudicating moot cases has two narrow exceptions, the "capable of repetition, yet evading review" exception and the "voluntary cessation" exception. Neither applies here.

### A. The "capable of repetition, yet evading review" exception is inapplicable.

The rule that a case does not become moot where it is "capable of repetition, yet evading review" applies "sparingly, and only in 'exceptional situations.'" *Protectmarriage.com-yes on 8 v. Bowen*, 752 F.3d 827, 836–37 (9th Cir. 2014) (quoting *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 481 (1990)); *see generally* Wright & Miller, Fed. Prac. & Proc. § 3533.8. To show that the challenge falls within this narrow exception to the mootness doctrine, the party asserting the exception applies has the burden of establishing that "(1) the duration of the challenged action is too short to allow full litigation before it ceases, and (2) there is a reasonable expectation that the plaintiffs will be subjected to it again."

*Northwest Resource Information Ctr. v. National Marine Fisheries Serv.*, 56 F.3d 1060, 1070 (9th Cir. 1995) (quoting *Greenpeace Action v. Franklin*, 14 F.3d 1324, 1329 (9th Cir. 1992)).  The capable of repetition, yet evading review exception does not fit the facts of this case.

As to the first condition—the duration of the challenged action—this Court looks to whether the action is of "inherently limited duration," *Protectmarriage.com*, 752 F.3d at 836, such that "the underlying action will almost certainly run its course before full litigation can be completed," *State of Alaska Dep't of Fish & Game v. Fed. Subsistence Bd.*, __ F.4th __, No. 22-35097, 2023 WL 2487268, at *3 (9th Cir. Mar. 14, 2023).  Controversies that are not of inherently limited duration do not justify the application of the exception, "because, even if a particular controversy evades review, there is no risk that future repetitions of the controversy will necessarily evade review as well . . . '[T]he exception was designed to apply to situations where the type of injury involved inherently precludes review, not to situations where . . . [review is precluded as a] practical matter.'" *Protectmarriage.com*, 752 F.3d at 837 (quoting *Bunker Ltd. P'ship v. United States*, 820 F.2d 308, 311 (9th Cir. 1987) (alterations in original)).

The controversy here—concerning a land exchange agreement pursuant to ANILCA—is not of an inherently limited duration such that it will evade review. Neither statute nor regulation prescribes the duration of land exchange agreements

under ANILCA. The 2019 Agreement went into effect in 2019; by its own terms, it was not set to expire until December 31, 2027—and the Agreement anticipated that its effective period could be extended by the parties. 2-ER-240–41. *Compare, e.g.*, *Greenpeace Action*, 14 F.3d at 1329–30 (fishing restrictions in place for one season are of inherently limited duration and will evade review); *City of Los Angeles v. Barr*, 929 F.3d 1163, 1172 (9th Cir. 2019) (grant program that allocates funds within three months evades review); *Wildwest Institute v. Kurth*, 855 F.3d 995, 1003 (9th Cir. 2017) (annual agency findings are of inherently limited duration and will evade review); *Natural Resources Defense Council v. Evans*, 316 F.3d 904, 910 (9th Cir. 2003) (seasonal fishing restrictions are of inherently limited duration and will evade review).

Nor is there any reason to expect that any hypothetical future land exchange agreement would be of short duration. Even assuming some future land exchange agreement were shorter than the 9 years contemplated by the 2019 Agreement, the practical realities of a land exchange under Section 1302(h) of ANILCA, such as the need for surveying and appraisal to assure the exchange is of equal value, means that such agreement would be of sufficient duration to ensure it does not evade review. *See, e.g.*, *Idaho Dep't of Fish & Game v. NMFS*, 56 F.3d 1071, 1075 (9th Cir. 1995) (four-year duration of agency's action was "more than enough time" for review).

An ANILCA land exchange is therefore different than the types of government action that this Court has found to be of inherently limited duration. Because ANILCA land exchanges generally do not evade review, this exception cannot apply.

In any event, the exception's second condition is not satisfied either. The party asserting the exception has the burden of demonstrating there is a "reasonable expectation or demonstrated probability that the *same* controversy will recur"; "mere physical or theoretical possibility" of recurrence does not suffice. *Murphy v. Hunt*, 455 U.S. 478, 482 (1982) (emphasis added). Here, no party could establish that there is either a reasonable expectation or a demonstrated probability of the same controversy recurring. *See, e.g.*, *Sample v. Johnson*, 771 F.2d 1335, 1342 (9th Cir. 1985) ("No matter how important the issue or how likely that a similar action will be brought, a court is without jurisdiction if there is not a sufficient likelihood of recurrence with respect to the party now before it."); *see id.* 1339–43 (collecting cases). Secretary Haaland has not indicated that she will necessarily approve a future land exchange agreement. And even if she does approve an agreement in the future, it would not be based on the same record and is not reasonably expected to be on the same terms. The Secretary's withdrawal decision expressly stated her policy position that any future land exchange "would likely be with different terms and conditions," and she set forth additional

10

procedural steps she would take, in the event of any proposed land exchange under
ANILCA Section 1302(h), to inform both the decision whether to enter into a
future exchange and the contours of a potential future exchange.  Attachment at 2.
Thus, while the Secretary's decision does not foreclose consideration of a future
land exchange agreement, it is not reasonably probable that Secretary Haaland
would enter a land exchange agreement on the same terms as Secretary Bernhardt.
*See Alaska Dep't Fish & Game*, 2023 WL 2487268, at *5 ("[W]here the agency
will base future decisions on a new report with different facts and analysis, we
have found that there is no reasonable expectation of repetition.") (citing *Idaho
Dep't of Fish & Game*, 56 F.3d at 1075).

In sum, a land exchange is not of inherently limited duration, such that it
would evade judicial review, nor is there a reasonable prospect this *same
controversy*—involving the same terms and conditions and same process as the
2019 Agreement—would be revived.  The capable of repetition, yet evading
review exception is inapplicable.

## B.    The "voluntary cessation" exception also does not apply.

The voluntary cessation exception to mootness is meant to protect plaintiffs
from a defendant who feigns corrective action to avoid review, then resumes its
conduct once the threat of the ongoing litigation has passed.  *See Forest Guardians
v. U.S. Forest Serv.*, 329 F.3d 1089, 1095 (9th Cir. 2003); *see also Knox v. Serv.*

*Employees Int'l Union*, 567 U.S. 298, 307 (2012). Accordingly, it is axiomatic that "a defendant cannot automatically moot a case simply by ending its unlawful conduct once sued." *Already, LLC v. Nike*, 568 U.S. 85, 91 (2013). But the federal government is no ordinary litigant. As this Court has counseled, "[t]he government's change of policy presents a special circumstance in the world of mootness." *Am. Cargo Trans., Inc. v United States*, 625 F.3d 1176, 1180 (9th Cir. 2010). When assessing whether the voluntary cessation exception applies, the government is accorded "more solicitude" than private parties and the Court "presume[s] the government is acting in good faith." *Id.*; *accord Brach v. Newsom*, 38 F.4th 6, 12–13 (9th Cir. 2022) (en banc); *Rosebrock v. Mathis*, 745 F.3d 963, 971 (9th Cir. 2014).

To be sure, the government, as the party asserting mootness, still must demonstrate that the challenged conduct cannot reasonably be expected to recur. *See Am. Diabetes Ass'n v. U.S. Dep't of the Army*, 938 F.3d 1147, 1152 (9th Cir. 2019). But under this Court's precedent, the government carries its burden "by persuading the court that 'the change in its behavior is 'entrenched' or 'permanent.'" *Id.* (quoting *Fikre v. FBI*, 904 F.3d 1033, 1037 (9th Cir. 2018)). "[A] policy change not reflected in statutory changes or even in changes in ordinances or regulations will not necessarily render a case moot, but may do so in certain circumstances." *Rosebrock*, 745 F.3d at 971 (internal citation omitted).

For such cases, this Court has no "definitive test for determining whether a voluntary cessation . . . has rendered a case moot." *Id.*; *see id.* at 972 & n.10 (citing factors the Court has considered and "emphasiz[ing] that the considerations discussed here do not provide an exhaustive or definitive list"). In a number of respects, the present circumstances demonstrate the offending conduct cannot "reasonably be expected" to recur. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 190 (2000).

As an initial matter, the Secretary has examined the issue, formally withdrawn from the 2019 Agreement, and set forth her reasoning in a formal decision memorandum. This case, therefore, is distinguishable from those cases where the executive's action is ungoverned by formal procedure or policy, as with prosecutorial decisions that can easily be revoked or changes to grant programs. *See, e.g.*, *Trinity Lutheran Church of Columbia v. Comer*, 137 S. Ct. 2012, 2019 n.1 (2017); *McCormack v. Herzog*, 788 F.3d 1017, 1025 (9th Cir. 2015) (prosecutor's decision not to re-file charges was not entrenched and permanent policy change), *abrogated on other grounds by Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228 (2022).

The content of the Secretary's decision memorandum also indicates that the Secretary's withdrawal from the 2019 Agreement is "entrenched" and "permanent." *Am. Diabetes Ass'n*, 938 F.3d at 1152. The Secretary's decision

13

memorandum explaining the withdrawal expressly indicated that, "in addition to and independent of" her procedural concerns, Attachment at 1, she disagreed with Secretary Bernhardt's balancing of environmental, safety, and subsistence considerations and "reached a different policy judgment on this exchange," *id.* at 3. This language—and the act itself of withdrawal—are clear and unequivocal signals that Interior has permanently abandoned the 2019 Agreement. *See Rosebrock*, 745 F.3d at 972 (mootness more likely if the policy change is evidenced by language that is "broad in scope and unequivocal in tone").

Further, a future land exchange agreement remains, at present, only a hypothetical prospect. Even assuming, however, that a future agreement may materialize, the 2019 Agreement and the legal violations Plaintiffs alleged it to contain cannot "reasonably be expected" to recur. *Friends of the Earth*, 528 U.S. at 190. The Secretary has made clear here that she has adopted a new policy on this land exchange by explaining that any hypothetical new agreement would be formulated only following different analyses and procedures that would give different weight to relevant considerations, such as subsistence uses and environmental protection. And the Secretary expressly stated that any new agreement "would likely be with different terms and conditions" than the 2019 Agreement. Attachment 1 at 2. A future suit, challenging a future land exchange, would therefore seek review of a different final agency action, present a different

14

administrative record, incorporate different procedural analyses, offer different justifications, and possibly a different final result. *Cf. Alaska Dep't Fish & Game*, 2023 WL 2487268, at \*6 (agency relying on new facts and analysis in new record in future action does not mean original action is reasonably likely to recur).

 In sum, the 2019 Agreement is gone, and there is no reasonable prospect that the Secretary will revive it. Nor is there any reasonable expectation that the Secretary will enter a new land exchange agreement on the same material terms as those contained in the 2019 Agreement.

### III.    The government takes no position on vacatur.

When a case becomes moot on appeal, this Court's normal rule is to vacate the district court order that is on appeal. *See NASD Dispute Resolution, Inc. v. Judicial Council of State of California*, 488 F.3d 1065, 1068 (9th Cir. 2007); *see generally Karcher v. May*, 484 U.S. 72, 82 (1987). But when a party's own, voluntary action causes mootness, that rule does not necessarily apply. *U.S. Bancorp Mortg. Co. v. Bonner Mall Partnership*, 513 U.S. 18, 25 (1994); *accord ACLU of Nevada v. Masto*, 670 F.3d 1046, 1065 (9th Cir. 2012). When considering vacatur, courts generally "dispose of moot cases in the manner most consonant to justice in view of the nature and character of the conditions which have caused the case to become moot." *Bancorp*, 513 U.S. at 24 (cleaned up).

15

Here, Intervenor-Appellants have appealed from an adverse judgment. Their actions did not cause mootness. The same is true of Plaintiffs, who are the prevailing parties below. While the United States does not affirmatively request vacatur of the underlying district court decision, the United States is also not opposed to vacatur.

## CONCLUSION

For the foregoing reasons, this case should be dismissed as moot.

Of Counsel:

KENNETH M. LORD
*Attorney*
U.S. Dep't of the Interior

Respectfully submitted,

s/ Michelle Melton
TODD KIM
*Assistant Attorney General*
ROBERT LUNDMAN
MICHELLE MELTON
*Attorneys*
Environment and Natural Resources Division
U.S. Department of Justice
Post Office Box 7415
Washington, D.C. 20044
(202) 532-3251
michelle.melton@usdoj.gov

March 17, 2023

DJ# 90-1-4-15825

16

## CERTIFICATE OF COMPLIANCE

1. This document complies with the type-volume limit in Federal Rule of Appellate Procedure 27(d)(2)(A), because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 27(a)(2)(B), this document contains 3,572 words.

2. This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Times New Roman font.

s/ *Michelle Melton*
MICHELLE MELTON
Counsel for Federal Appellees

***Attachment: Secretary's Withdrawal Memorandum***



THE SECRETARY OF THE INTERIOR
WASHINGTON

## DECISION MEMORANDUM TO WITHDRAW FROM THE 2019 LAND EXCHANGE AGREEMENT BETWEEN THE SECRETARY OF THE INTERIOR AND KING COVE CORPORATION

Background

On July 3, 2019, Secretary Bernhardt signed a memorandum titled "Findings and Conclusions Concerning a Proposed Land Exchange Between the Secretary of the Interior and King Cove Corporation for Lands Within Izembek National Wildlife Refuge, Alaska." (2019 Secretarial Memorandum). That memorandum laid the foundation for the concurrent approval of a land exchange (2019 Land Exchange) between the Department of the Interior and King Cove Corporation (KCC). The 2019 Secretarial Memorandum stated that the purpose of the 2019 Land Exchange was to allow a road across the Izembek National Wildlife Refuge (Refuge) to improve access by the residents of King Cove to the airport at Cold Bay. The 2019 Land Exchange was made under the Alaska National Interest Lands Conservation Act's (ANILCA) general exchange authority found at 16 U.S.C. § 3192(h). Nevertheless, the 2019 Land Exchange relied in large part on the record developed for an exchange considered and rejected by Secretary Jewell in a 2013 Record of Decision. The 2013 decision was made after completion of an Environmental Impact Statement (EIS) pursuant to the Omnibus Public Lands Act of 2009, Pub. L. No. 111-11, Title VI, Subtitle E, which authorized consideration of a land exchange for the purpose of constructing a single-lane gravel road.

The District Court for the District of Alaska vacated the 2019 Land Exchange less than one year after it became effective. The vacatur order, which remains in effect, was based on several legal defects in the decision, including that Secretary Bernhardt failed to properly justify his change in policy and his rejection of Secretary Jewell's prior conclusions. The District Court did not rule on whether the 2019 decision violated the National Environmental Policy Act (NEPA) or the Endangered Species Act (ESA). Those claims remain unresolved before the District Court. The District Court decision was appealed and fully briefed in the Ninth Circuit Court of Appeals before my confirmation as Interior Secretary. A three-judge panel reversed the District Court's decision, but the panel decision was then vacated pending review by an *en banc* panel. During this time, the Solicitor's Office initiated a review of the 2019 Secretarial Memorandum and the 2019 Land Exchange. That review revealed a procedural flaw regarding the potential impacts on subsistence uses and needs and highlighted significant shortcomings in the record regarding NEPA and ESA analysis. As a consequence of the litigation, the 2019 Land Exchange was in effect for less than eleven months and no land was transferred to KCC.

In addition to and independent of the procedural concerns and the record shortcomings, I have significant policy concerns regarding the manner in which the 2019 Land Exchange was accomplished, as well as the terms of that exchange. The policy concerns include a complete lack of public participation and major differences in the substance of the exchange evaluated in the 2019 Land Exchange compared to the exchange evaluated in the 2013 EIS. For example,

1

while the 2013 exchange included the State of Alaska and committed to add 43,000 acres of state lands and 13,000 KCC acres to the Refuge, the 2019 exchange does not include the State and only involves an equal value of to-be-determined land to be transferred to the Refuge. Because of these procedural and policy concerns, I have decided to withdraw from the 2019 Land Exchange. This decision does not foreclose further consideration of a land exchange to address the community's concerns, although such an exchange would likely be with different terms and conditions.

## The Failure to Consider the Effects of an Exchange on Subsistence Uses is a Procedural Flaw Warranting Withdrawal

Section 810(a) of ANILCA requires that "[i]n determining whether to … permit the … disposition of public lands under any provision of law authorizing such actions, the head of the Federal agency having primary jurisdiction over such lands … shall evaluate the effect of such … disposition on subsistence uses and needs …." 16 U.S.C. § 3120(a). There was no new Section 810 evaluation in advance of the 2019 Land Exchange. Secretary Bernhardt may have relied on the Section 810 evaluation that was completed in 2013, as it was an appendix to the 2013 EIS. But that evaluation lacked analysis of the substantially different elements in the exchange under consideration in 2013 and the exchange signed in 2019, and those differences could amount to significant restrictions on subsistence uses.

Specifically, the 2019 Land Exchange did not prohibit commercial use of the road, did not require barriers to be installed along the road, authorized gravel mining within the Refuge, allowed twice as much land for the road, and would result in far less land coming to the Refuge. Allowing commercial use of the road could result in significant numbers of trucks transporting fisheries products through the Refuge during the summer months. This increase in traffic and noise could, in turn, result in significant disruptions and disturbance to vulnerable populations of wildlife and birds. Similar impacts may arise from the elimination of the roadside barriers previously required to prevent vehicle access to Refuge lands, including Wilderness lands and lands that are important habitat for subsistence resources. Increased access along the road, either directly or by allowing parking off of the road, may be beneficial to subsistence users; however, that same increased access may lead to increased harvest by sport hunters, thereby negatively impacting subsistence harvest of caribou and waterfowl. Further, unlike the 2013 proposed exchange, the 2019 Land Exchange would have relinquished additional acreage along the road corridor to allow for gravel mining within the Refuge. Such mining activity was not contemplated or analyzed in 2013. Finally, pursuant to the 2019 Land Exchange, more land would be conveyed out of federal ownership along the road corridor and therefore not subject to the Title VIII rural subsistence priority, while the amount of land added to the Refuge and subject to the subsistence priority is unknown. Because it would only be in an amount equal in appraised value to the 490 acres being conveyed to KCC, it is likely that it would be substantially less than the over 50,000-acre increase in Refuge lands analyzed in 2013. The collective impacts to subsistence uses resulting from all of these differences have never been properly analyzed. I find that reliance solely on the 2013 Section 810 evaluation without conducting a new subsistence evaluation before executing the 2019 Land Exchange is a procedural deficiency that warrants withdrawal from the 2019 exchange.

<u>The Failure to Conduct Adequate NEPA and ESA Analysis Supports the Withdrawal</u>

In addition to the Section 810 flaw, I harbor strong concerns that the change in scope in the 2019 Land Exchange from the land exchange considered in the 2013 EIS was not fully addressed in any NEPA analysis. I am aware that Secretary Bernhardt was of the view that pursuant to Section 910 of ANILCA, no EIS is required for the 2019 Land Exchange. Regardless of the correctness of that conclusion as a matter of law, in my policy judgment the 2019 Land Exchange's substantial differences from the 2013 exchange relevant to environmental concerns should have been analyzed and subjected to public comment. The 2013 EIS did not evaluate an exchange and road with the same features as the 2019 Land Exchange. As a matter of policy, I have concluded that some form of additional NEPA analysis should have been undertaken to inform the Secretary and the public about the decision. This would also serve to ensure that the Department's actions would further the conservation and subsistence purposes of ANILCA. The fact that this analysis was not completed supplies an independent basis for withdrawing from the 2019 Land Exchange.

Moreover, I note that the 2019 Land Exchange, despite its potentially greater environmental impacts, was finalized without further review under Section 7 of the ESA for the Steller's eider, southwest Alaska distinct population segment of the northern sea otter, Steller sea lion, and associated critical habitat for each species. In the absence of such review, I cannot be confident in whether the land exchange or associated activities such as road construction, gravel mining and commercial traffic may affect these species or designated critical habitat. As a matter of policy, further review under Section 7 of the ESA should have been undertaken to inform the Secretary about the decision. The absence of this review provides an additional independent basis for withdrawing from the 2019 Land Exchange.

<u>Policy Reasons for Withdrawing from the 2019 Land Exchange</u>

I have thoroughly considered and reweighed the many competing policy objectives involved in connection with the 2019 Land Exchange based on the record before Secretary Bernhardt. In so doing, I have reached a different policy judgment on this exchange than the one reached by Secretary Bernhardt. In revisiting policy considerations, I rely on the same factual findings as those made by Secretary Bernhardt. As noted above, the 2019 Land Exchange allowed commercial use of the road, did not require barriers to be installed along the road, authorized gravel mining within the Refuge, provided for the transfer to KCC of twice as much land for the road, and would result in far less land coming to the Refuge. Moreover, the lack of public participation in developing the 2019 Land Exchange is a procedural defect that runs counter to my strong belief that important decisions must be made with transparency. In a transaction like this one, public land must not be transferred to a private party without a public process.

I agree with Secretary Bernhardt's conclusion that a road would degrade environmental resources as detailed by Secretary Jewell, but I believe the potential environmental impacts require more review by the agency and comment by the public. I also agree on the premium importance of protecting human life and safety. However, as a policy objective, I also place a high premium on the protection of subsistence resources and uses, and this policy objective does not seem to have played a significant part in Secretary Bernhardt's decision. For purposes of my balancing of considerations, I accepted Secretary Bernhardt's findings that alternative means of transportation between King Cove and Cold Bay are not viable or available, and also assumed that there are high ongoing and future costs to the taxpayers of continuing emergency medical

3

evacuations from King Cove by the U.S. Coast Guard. I simply do not find that these considerations outweigh the countervailing policy considerations.

I reject the false dichotomy that a decision on this land exchange required a tradeoff between protecting human life and safety and protecting the environment. The substantial changes in the 2019 Land Exchange do not improve human life and safety any more than the proposed exchange and road that Secretary Jewell rejected. Yet those changes do seem to increase the potential for additional significant impacts to conservation and subsistence. As previously discussed, the impacts to conservation and subsistence values were not fully developed in the record, and the lack of public process counsels in favor of my decision to explore a different path. In terms of any reliance concerns, as noted above, the District Court vacated the 2019 Land Exchange after less than eleven months, and no lands ever changed hands.

Conclusion

I have therefore decided to withdraw from the 2019 Land Exchange based on the legal and policy concerns discussed above. This decision does not foreclose further consideration of a land exchange to address the community's concerns.

Date: March 14, 2023

Secretary of the Interior

4